Douglas F. Dieker, SBN 018317
**DIEKER COPPLE, PLLC**
14256 North Northsight Blvd., Suite 110
Scottsdale, Arizona 85260
(602) 528-4700 – Office
(602) 528-4701 –Fax
douglas@diekercopplelaw.com
*Attorney for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Donald Grasse and Tamara Grasse,<br><br>Plaintiffs,<br><br>vs.<br><br>State Farm Fire and Casualty Company, an Illinois Corporation, John and Jane Does I-X; XYZ Partnerships I-X; ABC Corporations I-X,<br><br>Defendants. | Case No.:   23-02435-PHX-SRB<br><br>**MOTION TO CONFIRM APPRAISAL AWARD** |

Plaintiffs Donald and Tamara Grasse ("Plaintiffs"), pursuant to A.R.S. § 12-1511, hereby file their Motion to Confirm the Appraisal Award, dated July 12, 2023, on their insurance claim. The award is executed by the insureds' appraiser and the assigned Umpire (attached as Exhibit A) making it a valid award pursuant to the parties' insurance policy. The appraisal panel has made a final and binding determination of the amount of loss to Plaintiffs' home caused when a storm passed through on July 12, 2021. State Farm admits that damage caused by this storm event is covered under the policy. State Farm disagrees with the appraisers' findings as to the amount of property damaged by the storm. State Farm's contention that its disagreement with the appraisers' findings of fact raises a coverage dispute is illogical and contrary to the vast weight of caselaw in Arizona and

1

across the country. The coverage available under the policy for storm loss is undisputed and this Court should confirm the Appraisal Award and enter judgment for the amount awarded as required by A.R.S. § 12-1511. This Application is further supported by the following Memorandum of Points and Authorities.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    FACTUAL AND APPRAISAL PROCEEDING BACKGROUND**

Plaintiffs Donald and Tamera Grasse own their home at 10040 E. Happy Valley, Unit 70, Scottsdale, Arizona 85255 that is insured under a homeowner's policy with State Farm. Plaintiffs suffered a storm loss to their home on July 12, 2021, which caused extensive damage to Plaintiffs' home.

Plaintiffs made a claim for the loss and on or about July 12, 2021 and State Farm inspected Plaintiffs' residence resulting in an estimate totaling $24,156.55 Replacement Cost Value (RCV).  (See Exhibit B attached hereto) After applying depreciation of $5,217.20 and applying the insureds' deductible of $7,121.00, resulting in State Farm making payment on Plaintiffs' claim in the amount of $11,818.35. (Id.).  Plaintiffs retained Scott Lampman, a public adjuster, who completed his estimate on July 4, 2021, totaling $264,130.43 RCV. (See Exhibit C attached hereto).  Consequently, a dispute of the value of Plaintiffs' loss existed on their claim.

On June 24, 2022, State Farm acknowledged and accepted Plaintiffs' demand for appraisal pursuant to the policy terms and conditions. (June 24, 2022 State Farm correspondence attached as Exhibit "D".) The Appraisal Clause in the policy allows either party to the contract to invoke the appraisal remedy. The Appraisal Clause reads, in pertinent part, as follows:

> **Appraisal**.  If *you* and *we* fail to agree on the amount of loss, either party can demand the amount of the loss be set by appraisal.  Only *you* or *we* may demand appraisal.  A demand for appraisal must be in

writing. **You** must comply with **SECTION I – CONDITIONS, Your Duties After Loss** before making a demand for appraisal.  At least 10 days before demanding appraisal, the party seeking appraisal must provide the other party with written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed.

a.      Each party will select a competent, disinterested appraiser and notify the other party of the appraiser's identity within 20 days of receipt of the written demand for appraisal.

b.      The appraisers will then attempt to set the amount of the loss of each item in dispute as specified by each party, and jointly submit to each party a written report of agreement signed by them.  In all instances the written report of agreement will be itemized and state separately the actual cash value, replacement cost, and if applicable, the market value of each item in dispute.

The written report of agreement will set the amount of the loss of each item in dispute and will be binding upon **you** and **us**.

(Pertinent portions of State Farm's policy attached as Exhibit E.)

On July 12, 2023, the appraisal panel reached an agreement on the amount of the loss sustained to Plaintiffs' residence as a result of the subject storm.   Specifically, Plaintiffs' chosen appraiser, Jack Hanks, and the selected Umpire, Adam Salene, set the amount of the loss to the dwelling when they awarded Plaintiffs $89,136.35 replacement cost value (RCV) and $82,775.77 actual cash value (ACV) on the property loss caused by the subject storm. (See Exhibit A; See also, Exhibit F attached hereto, Appraisal Estimate).

The Appraisal Award was itemized, as the policy requires, to reflect separate amounts for the Dwelling, Other Structures, Contents and Additional Living Expense amounts awarded and separately stated the actual cash value of the loss. (Id.) The amount

awarded was substantially greater than the total amount State Farm had agreed to pay on the claim. (See Exhibit B).

On August 14, 2023, State Farm sent correspondence notifying Plaintiffs that it was deducting $44,737.70 from the amount awarded by the appraisers. (See Exhibit G). With its correspondence, State Farm made an additional payment to Plaintiffs in the amount of $19,689.13. (Id.). Because recoverable depreciation must be incurred within two years of the date of the loss pursuant to the policy, State Farm's payment also deducted $5,820.17 in depreciation. (Id.) State Farm stated that it disagreed with the appraisers' conclusion of the amount of loss by asserting some items were uncovered. (Id.). State Farm claimed in its correspondence that damages included in the award were caused by events excluded by the subject policy. (Id.). State Farm maintained that this disagreement constituted a coverage issue not appropriate for appraisal. (Id.). The amount of damage caused by the covered storm event was not a coverage dispute - it was a factual dispute that was submitted to the appraisers to resolve. State Farm and Plaintiffs agree that property damage caused by the July 12, 2021, storm is covered under State Farm's policy, and agree that any losses caused by this insured event are covered under the insurance claim that was submitted to appraisal. No coverage dispute exists on this claim. The appraisers resolved a factual dispute as to the amount of damage to the Plaintiffs' insured property and the reasonable cost to repair it, and the appraisers findings of fact are binding on State Farm pursuant to clear policy language.

4

Plaintiffs now seek an Order Confirming the Appraisal Award entered in this matter pursuant to A.R.S. § 12-1511 and Judgment be entered thereon in accordance with A.R.S. § 12-1514.

## II.   LEGAL ARGUMENT

### A.   Appraisal Awards are Final and Conclusive as to Disputes Over the Amount of Loss Caused by an Insured Event Like the July 12, 2021 Storm at Plaintiffs' Home.

The Arizona legislature has expressly empowered this Court to confirm the Appraisal Award entered setting the amount of the loss resulting from Plaintiffs' January 25, 2021 storm loss.  *See* A.R.S. § 12-1511. *See also Morgan v. Carillon Investments, Inc.*, 207 Ariz. 547, 550 (App. 2004), affirmed (*en banc*) 210 Ariz. 87 (2005) (finding that A.R. S. § 12-1511 is the correct mechanism for affirming an arbitration award and converting it to an enforceable judgment). Arizona courts apply principles of arbitration law to resolve disputes under insurance appraisal clauses, reasoning that "appraisal is analogous to arbitration." *Meineke v. Twin City Fire Ins. Co.*, 181 Ariz. 576, 580 (App. 1994). Since public policy favors arbitration, it also favors liberally construing a policy's appraisal clause and resolving any doubt in favor of the appraisal process. *Id.* At 581. A trial court's review of an arbitration or appraisal award for the purpose of confirming an award should be undertaken in the light most favorable to upholding the award. *Atreus Communities Group of Ariz. V. Stardust Dev., Inc.*, 229 Ariz. 503,506 (App. 2012). Judicial review of arbitration or appraisal awards is severely limited. *Creative Builders Inc. v. Avenue Dev., Inc.*, 148 Ariz. 452, 456 (App. 1986). "Except for certain well-

defined circumstances … [a] trial court has no authority to modify an arbitration award." A trial court should confirm an award even when it's "convinced that the arbitrators have erred in their resolution of factual or legal issues" *Id.* A trial court must "presume that arbitrators decided only those issues submitted for arbitration." *Einhorn v. Valley Med. Specialists, P.C.*, 172 Ariz. 571, 573 (App. 1992). These principles reinforce the strong presumption favoring the conclusiveness and finality of arbitration and appraisal awards recognized in Arizona. *Meineke, supra.*

State Farm attempted to justify its unilateral deduction from the Appraisal Award by disputing the appraisers' judgment that damage to Plaintiffs' property was caused by the subject storm, and instead asserted it was caused by other excluded events. (Exhibit G). In doing so, State Farm ignores the award itself which states that "[w]e certify that we have conscientiously and impartially performed the duties assigned to us in accordance with the appraisal provision of the policy and do hereby award the amounts established above ***for the described loss***." (Exhibit A) (Emphasis added). The appraisal provision of the policy, as quoted above, directs the appraisers to "set the amount of loss" and that an agreement by any two of the three appraisers and umpire on the panel is "binding" on both parties.

An award is not subject to attack simply because one party believes the appraisers erred with respect to factual determinations or legal interpretations. *Hirt v. Hervey*, 118 Ariz. 543, 578 P.2d 624 (Ct. App. 1978). "Apart from questions of fraud or corruption, 'the decisions of the arbitrators on questions of fact and law are final and conclusive, except when they conflict with the express guidelines or standards set forth or adopted in

the arbitration agreement.'" *Id.* at 545 *quoting Smitty's Super-Valu, Inc. v. Pasquelleti*, 22 Ariz.App. 178, 182, 525 P.2d 309, 313 (1973). There are no questions of fraud or corruption here, State Farm simply doesn't like the award entered.  That is not sufficient grounds to avoid confirmation and judgment on the Appraisal Award.

Simply put, State Farm and Plaintiffs had a dispute as to the amount of loss caused by the subject storm. Through the appraisal of the loss, the appraisers resolved that dispute by entering their award. Under Arizona law, there is no role for a trial court to play in assessing whether the appraisers were right or wrong in making this judgment on the facts. Even if this Court was convinced that the appraisers got it wrong, it must give deference to the appraisers' view of the evidence and enforce the appraisal remedy as set forth in the parties' contract. See *Creative Builders*, 148 Ariz. at 456.

> **B.**   **The Law is Clear that, When the Availability of Coverage for an Insured Event is Undisputed, the Amount of Loss Caused By the Insured Event is an Issue of Fact that Can Be Resolved Through the Appraisal Process**.

Plaintiffs agree with State Farm that the Appraisal Clause in the policy does not empower appraisers to make coverage determinations. *Hanson v. Commercial Union Ins. Co.*, 150 Ariz. 283, 286 (App. 1986).  If there was a true coverage dispute here, it would be this Court's job to interpret the contract and resolve the coverage issue as a matter of law *See State Farm Mut. Auto Ins. Co. v. Bogart*, 149 Ariz. 154, 155-56 (App. 1985).  Imagine the absurd consequences if the Court accepted State Farm's argument that the dispute over the damage to Plaintiffs' home was a coverage issue. If that was the law, then this Court would be required to substitute its own judgment for that of the independent construction experts who went to the home and actually inspected the loss site and the damage at issue. It is beyond obvious that determining whether a piece of property was damaged by a loss

event such as storm is not a contract interpretation task. Making that determination requires someone to make a finding of fact. The Appraisal Clause allows qualified appraisers to independently make these findings so that individual insureds like Plaintiffs here can avoid the colossal expense of resolving such disputes through the litigation process. If an insurer had the right to come to court and ask either a judge or a jury to reconsider the conclusion of an appraisal panel as to what was or was not damaged by an insured event, that would destroy the essential purpose of the appraisal remedy. It is fortunate for both insurance consumers, and our court system, that State Farm's position has been rejected by the vast majority of courts that have considered this question.

In *Harvey Property Management Co. v. Travelers Indem. Co.*, 2012 WL 5488898 (D. Ariz. 2012), an insurer and its insured disagreed as to the extent of damage to concrete roof tiles caused by a storm. Harvey Property Management claimed that its roof tiles were damaged by an insured storm event and Travelers (just like State Farm here) argued that the damages were caused by wear and tear or faulty workmanship and had nothing to do with the covered wind storm. The court rejected Travelers' argument that this dispute presented a coverage issue outside the scope of the Appraisal Clause. Id. at *4-5. When appraisers determine the amount of damage caused by an admittedly covered event, they are not interpreting contracts or making coverage decisions. Instead, when appraisers decide whether an item of insured property was or was not damaged by an insured event, they are making findings of fact essential to their assigned task of determining the amount of a loss. As the *Harvey* court explained, "once the insurer has admitted the existence of a covered loss, any valuation must necessarily include a determination of what portion of the loss was caused by the covered event." Id. at *5 (*citing Kendall Lakes Townhomes Developers, Inc. v. Agricultural Excess & Surplus Lines Ins. Co.*, 916 So.2d 12, 16 (Fla.D.Ct.App. 2005)). In the context of an insurance appraisal, "an appraiser's

assessment of the 'amount of loss' necessarily includes a determination of the cause of the loss, as well as the amount it would cost to repair that which was lost." Id. (*citing Cigna Ins. Co. v. Didimoi Prop. Holdings, N.V.*, 110 F.Supp.2d 259, 264 (D. Del. 2000)). To support its conclusion that such disputes relate to the amount of damage, and have nothing to do with the "meaning of the insurance policy itself," the *Harvey* court offered the following reasoning from *Johnson v. State Farm Lloyds*, 204 S.W.3d 897, 903 (Tex. App. 2006):

> If the parties had to first agree on which specific shingles were damaged and approach every disagreement on extent of damage as a causation, coverage or liability issue, each party could defeat the other party's request for an appraisal by labeling a disagreement as a coverage dispute Instead, as the process is designed, once it is determined that there is a covered loss and a dispute about the amount of that loss, the appraisal process determines the amount that should be paid because of loss from a covered peril.

Id. at *5, fn. 42.

State Farm contends there was some damage to Plaintiffs' property that was related to excluded causes of loss other than the subject storm. (Exhibits B and G). The appraisers found that there was causally related storm damage to all the property included in the Appraisal Award. (Exhibit A). The question of law presented by this Application, therefore, requires this Court to determine whether appraisers can decide disputes over the cause of property damage. The district court in *Ori v. American Family Mut. Ins. Co.*, 2005 WL 3079044, *4, fn. 4 (D. Ariz.) succinctly dismissed an insurer's argument that causation disputes raise coverage issues by directing that the "appraisal will determine the amount of loss due to the covered event (the fire); any loss not due to that event should not be included in the appraisal." Many other courts have reached the same common-sense conclusion that determining the cause of damage is an indispensable step in

determining the "amount of loss" on an insurance claim submitted to appraisal. See, e.g., *Zarour v. Pacific Indem. Co*., 113 F.Supp.3d 711, 716 (S.D.N.Y. 2015) ("the issue of damage causation is properly subject to appraisal"); *Walnut Creek Townhome Ass'n v. Depositors Ins. Co*., 913 N.W. 2d 80, 91 (Iowa 2018) ("actual causation issues may be decided through the appraisal process"); *Travelers Indem. Co. v. BonBeck Parker, LLC*, 223 F.Supp.3d 1155, 1159 (10th Cir. 2016) ("appraisals may determine causation"); *Hahn v. Allstate Ins. Co*., 15 A.3d 1026, 1030 (R.I. 2011) (causation and amount of loss are "inextricably intertwined"); *Coates v. Erie Ins. Exchange*, 79 Va. Cir. 440, 445 (2009) ("the question of what must be replaced in order to adequately repair the damage caused by the admittedly covered event . . . is a question of the extent of 'amount of loss' and is therefore appropriate for appraisal"). State Farm is certainly well-aware that the position it has taken on Plaintiffs' claim is contrary to well-established law. See, e.g., *North Glenn Homeowners As*s'n *v. State Farm Fire & Cas. Co*., 854 N.W.2d 67, 71 (Iowa App. 2014) ("causation is an integral part of the definition of loss").

Resolving the dispute between Plaintiffs and State Farm about the amount of damage to the property as a result of storm is exactly what appraisers are empowered to do. See *MLCSV10 v. Stateside Enterprises, Inc*., 866 F.Supp.2d 691, 704 (S.D. Tex. 2012) (appraisers do not make coverage decisions by "separating a loss due to a covered event from a property's pre-existing condition"). Likewise, the appraisers' determination that a proper repair of damage to a portion of the tile roof was full replacement, not partial repair, is yet another finding of fact the appraisers were empowered to make. See *Ori*, supra at *4 (appraisers were empowered to determine whether it was necessary to remove the entire ceiling in the home). *See also Florida Farm Bureau Cas. Ins. Co. v. Sheaffer*, 687 So.2d 1331, 1334 (Fla. 1st D. 1997) (appraisers were empowered to determine whether proper repairs required replacement of all roof tiles or only those directly

damaged during the covered storm event). State Farm's disagreement with the appraisers' findings of fact on these damage issues does not raise a coverage dispute and provides no legal basis for this Court to deny confirmation of the Appraisal Award as required by A.R.S. § 12-1511.

### C. An Award of the Grasse's Reasonable Attorneys' Fees and Interest is Essential to the Integrity and Purpose of the Appraisal Process.

Clearly State Farm's attempt to raise a coverage defense as grounds for resisting payment of Plaintiffs' Appraisal Award creates a dispute that arises under contract under A.R.S. § 12-341.01. Plaintiffs' ability to restore their home to its pre-loss condition for the amounts awarded in the appraisal has already been significantly diminished by a prolonged and expensive appraisal process.  If the Court grants Plaintiffs' Application but fails to award them their reasonable attorneys' fees, then the expenses they have incurred in order to enforce their appraisal remedy will deprive them of the benefit of their bargain under their insurance contract and the appraisal remedy.  It is easy for State Farm to pay its counsel to resist the appraisal remedy when the appraisers' findings of fact don't go their way.  The hardship on an individual insured faced with the burden of hiring counsel and taking legal action to force an insurer to honor its contract is grossly disproportional. Plaintiffs respectfully submit that ordinary notions of justice and fair play, coupled with the strong public policy favoring alternative dispute resolution processes, require that the Court order State Farm to pay their reasonable attorneys' fees incurred in making this application, plus interest owed on all untimely payments.

### III. Conclusion.

The viability of insurance appraisals as an alternative dispute resolution option is at stake with this Application. If insurance companies who are dissatisfied with

appraisers' findings of fact can force their insureds into litigation by recasting factual disputes as coverage issues, then the appraisal remedy is useless. It is a meaningless truism for State Farm to declare that property that is not damaged by an insured event, and repair procedures that are not necessary, are not covered under its policy. Obviously, such evasive arguments miss the point entirely. The question of law at issue here is whether appraisers are empowered to decide how much property was damaged and what the reasonable repair procedures are. If the answer to that question is no, then the appraisal remedy in the policy is rendered meaningless. The well-reasoned caselaw on this issue, however, overwhelmingly concludes that appraisers are empowered to decide what property was damaged by an insured event, and what it costs to repair or replace it. Accordingly, this Court should grant Plaintiffs' Motion to Confirm Appraisal Award in its entirety and allow Plaintiffs to submit an application for their attorneys' fees incurred to enforce their appraisal remedy plus prejudgment interest on untimely payments.

DATED this  19th  day of January 2024.

**DIEKER COPPLE, PLLC**


By: */s/ Douglas F. Dieker*
Douglas F. Dieker
14256 North Northsight Blvd., Suite 110
Scottsdale, Arizona 85260
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 19, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmitted copies of the same and a Notice of Electronic Filing to the following CM/ECF registrants:

Robert T. Sullivan, Esq.
Kelley M. Jancaitis, Esq.
Broening Oberg Woods & Wilson, P.C.
2800 N. Central Avenue, Suite 1600
Phoenix, Arizona 85004
Attorneys for Defendant State Farm Fire and Casualty Company

/s/ Douglas F. Dieker