LAW OFFICES
**BROENING OBERG WOODS & WILSON**
PROFESSIONAL CORPORATION
2800 N. CENTRAL AVE., SUITE 1600
PHOENIX, ARIZONA 85004
(602) 271-7700

Robert T. Sullivan/Bar No. 022719
rts@bowwlaw.com
Kelley M. Jancaitis/Bar No. 025555
kmj@bowwlaw.com
Minute Entries/Orders: cjg@bowwlaw.com
*Attorneys for Defendant State Farm*
*Fire and Casualty Company*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Donald Grasse and Tamara Grasse, husband and wife, | Case No. 2:23-cv-02435-SRB |
| Plaintiffs, | |
| vs. | **RESPONSE IN OPPOSITION TO MOTION TO CONFIRM APPRAISAL AWARD [DOC. 13]** |
| State Farm Fire and Casualty Company, an Illinois Corporation, John and Jane Does I-X; XYZ Partnerships I-X; ABC Corporations I-X, | |
| Defendants. | |

Defendant State Farm Fire and Casualty Company ("State Farm"), through undersigned counsel, responds in opposition to Plaintiffs' Motion to Enforce Appraisal Award [Doc. 13]. Plaintiffs' request is for rubberstamp-approval of an overbroad and improper appraisal award that would in effect create insurance coverage broader than that provided by the State Farm Policy that Plaintiffs purchased and which governs this dispute. The request is inconsistent with the factual record, the insurance contract, and binding Arizona law.

According to the Policy, the appraisal process can only be used to resolve disputes regarding <u>the dollar value of a covered loss</u>. By contract, appraisal was not available to resolve disputes regarding any other question of fact, coverage, or causation, such as those at issue

here. As a result, the appraisal award includes line items for both covered and non-covered repairs and is not a statement of State Farm's ultimate liability under the Policy. State Farm cannot fairly be required to compensate Plaintiffs for non-covered losses. Nor does Arizona allow one appraiser and an umpire to stand in for a jury on issues the Policy does not subject to resolution via appraisal.

The Court need not reach that issue, however, because the record demonstrates that the appraisers did not and did not purport to resolve any questions of causation or coverage. The Appraisal Award represents a determination of the value of each item in dispute only, which bind the parties only as to items of loss that are covered by the Policy. Because State Farm disputes that all of the items listed in the Appraisal Award are covered, the Award cannot be confirmed.

For all of these reasons, Plaintiffs' motion must be denied.

## I.    FACTUAL BACKGROUND: PLAINTIFF DEMANDED APPRAISAL OF ISSUES BEYOND THE DOLLAR AMOUNT OF LOSS

### A.  The Insurance Contract (Policy) Defines the Scope of Coverage.

Plaintiffs Donald and Tamara Grasse are the named insureds on a State Farm homeowners policy ("the Policy") covering real property on Happy Valley Road in Scottsdale. [*See* Policy, **Exhibit A**.] The Policy is designed to compensate insureds for damage to the residence caused by any covered "accidental direct physical loss" or occurrence during the policy period, "unless the loss is excluded or limited." [Policy, **Ex. A**, at 12.] All coverages are subject to the Policy's terms, conditions, and exclusions. [*Id*.]

Relevant here, the Policy does not cover (or in other words, excludes coverage for) damage to the dwelling caused in whole or in part by "wear, tear, decay, . . . deterioration," "all animals, birds, or insects," and "defect, weakness, inadequacy, fault, or unsoundness in . . . maintenance . . . workmanship, repair, construction" or "materials used in repair, [or] construction." [Policy, **Ex. A**, at 15, ¶¶ (g), (l) & 17-18, ¶ 3(b).] These exclusions apply "regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread

damage, arises from natural or external forces, or occurs as a result of any combination of these." [Policy, **Ex. A**, at 14, ¶ 1 & 17, ¶ 3.]

### B. Plaintiffs' Home Experienced Minor Damage During a Storm

In February 2022, Plaintiffs reported that the residence had been damaged by a storm the previous July. [Claim Notes, **Exhibit B**, at SF-GRASSE 000067.] Plaintiffs were not at the property during the storm. [JS Held Storm Damage Assessment Report, March 14, 2022, **Exhibit C**, at 3.] At the time, the roof, constructed with the home in 1997, was 25 years old and had never been repaired or maintained, despite weathering many significant hail storms (none of which were confirmed for July 2021). [JS Held Report, **Ex. C**, at 3, 7-8.]

State Farm investigated the claim and, with the assistance of a trained engineer, determined that much of the reported damage – including to the roofing tiles, vent caps and fins, stucco, garage and rear patio, and solar panels – were not and could not have been caused by a July 2021 storm, and the storm did not cause any water intrusion. [Claim Notes, **Exhibit B**, at SF-GRASSE 000047; JS Held Report, **Ex. C**; Letter from State Farm to Scott Lampman, March 17, 2022, **Exhibit D**.] Instead, damage to these items were caused by wear and tear, design defects, accumulated debris, and animal activity, none of which are covered under the Policy. [Policy, **Ex. A**, at 14-18; JS Held Report, **Ex. C**, at 8-10.] State Farm advised Plaintiffs of its findings, issued a partial coverage denial, and issued payment for the limited storm-related damages observed. [Claim Notes, **Ex. B**, at SF-GRASSE000047-48; Letter, **Ex. D**.]

### C. Plaintiffs Demand Appraisal of Both Covered and Non-Covered Losses

Although State Farm had advised Plaintiffs that certain components of their roof had not sustained covered damages, Plaintiffs nonetheless demanded appraisal "for, but not limited to, roof repairs." [Demand for Appraisal, June 10, 2022, attached as **Exhibit E**.] State Farm agreed to participate in the appraisal process "consistent with the policy provisions and applicable law, and subject to [its] reservation of rights" – that is, only as to "the damaged items for which we have admitted liability" as described in the its estimate. [Letter from State

Farm to Plaintiffs, June 24, 2022, **Exhibit F**, at 1-2.] State Farm's position on the scope and purpose of appraisal was clear: "With respect to any repair or replacement of property that falls outside of the scope for which we have admitted liability as outlined by our enclosed estimate, we reserve our right to exclude those costs from any appraisal award or payment based on this award." [Letter, **Ex. F**, at 2.]

State Farm also requested that any appraisal award be itemized so it could ensure only covered losses were paid from Policy proceeds, and repeatedly reserved all of its rights under the Policy to litigate the coverage defenses it had already conveyed to Plaintiffs (relating to the existence and extent of an accidental direct physical loss). [Letter, **Ex. F**, at 2-4.] In doing so, State Farm adhered to the procedure outlined by this Court in *6700 Arrowhead Owners Ass'n v. State Farm*, No. CV-12-1677-PHX-DGC, 2012 WL 5868969 (D. Ariz. 2012).

**D.    The Appraisal Award Did Not Resolve Coverage Or Causation Disputes**

The Appraisal Award ultimately entered incorporated an attached "Exhibit A (Itemized Valuation)" that allowed for repairs to items of damage for which State Farm had denied coverage, including to the roofing tiles, vent caps and fins, stucco and garage. [Appraisal Award, July 12, 2023, **Exhibit G**, at Exhibit A (Itemized Valuation), ll. 12-14, 18-20, 22-23, 25-26, 35, 113-38, 153.[1]] However, the Award specifically stated that the values attached to those items of loss were "mutually ascertained . . . <u>without regard to policy coverage, loss causation, or any other terms, conditions, provisions, or exclusions</u>" of the Policy. [Appraisal Award, **Ex. G**, at 1 (emphasis added).] The Award further stated: "This award acknowledges that the coverages listed in the policy may or may not extend to the individual broken down items or any applied overhead and profit shown in the appraisal award totals as listed above or the attached Exhibit A (Itemized Valuation)." [Appraisal Award, **Ex. G**, at 2.] The Award

[1] Plaintiffs state: "The Appraisal Award was itemized . . . to reflect separate amounts for the Dwelling, Other Structures, Contents and Additional Living Expense amounts awarded." [Doc. 13 at 3.] This is a partial truth. The Award also attached and incorporated "Exhibit A (Itemized Valuation)" that lists and values the "individual broken down items" in dispute. [Appraisal Award, **Ex. G**, at Ex. A.]

itself demonstrates that the appraisal panel in fact only attached values to the items presented; it did not determination loss causation or policy coverage.

As State Farm had already explained to Plaintiffs, certain of the damages in the Itemized Valuation were not covered by the Policy, so State Farm was unable to extend payment for the repair of these items. [Letter, **Ex. D**; Letter from State Farm to Scott Lampman, August 14, 2023, attached as **Exhibit H**, at 1.] State Farm did promptly pay the portions of the Award corresponding to covered items within the agreed-upon scope of appraisal. [Letter, **Ex. E**.] The underlying lawsuit, and this Motion, followed.

## II. PLAINTIFFS CANNOT CREATE COVERAGE BY LABELING ALL LOSSES "STORM DAMAGE," FALSELY DENYING THE COVERAGE DISPUTE, AND MISREPRESENTING THE APPRAISAL PANEL'S FINDINGS

Plaintiffs do not appear to seriously dispute the law governing appraisal and the undeniable conclusion, based on the Policy, Arizona law, and the parties' communications, that State Farm's ultimate liability under the Policy cannot be adjudicated via appraisal. *See infra* Part III. They instead argue that the appraisal panel did nothing more than resolve a so-called "causation" dispute. Based on that characterization, Plaintiffs posit the dipositive question as "whether appraisers can decide disputes over the cause of property damage." [Doc. 13 at 9, 12.]

Reliance on a "causation" label is legally flawed for the reasons outlined in Part IV *infra*. Regardless, the appraisal panel did not resolve a causation dispute. Although Plaintiffs state: "The appraisers found that there was causally related storm damage to all the property included in the Appraisal Award" [Doc. 13 at 9], that assertion is not only wholly unsupported, it is directly contradicted by the record.

Instead, the Appraisal Award, certified by Plaintiffs' appraiser and the umpire, specifically states that the values were assigned to the "individual broken down items" in the Itemized Valuation **"without regard to . . . loss causation**." [Appraisal Award, **Ex. G**, at 1.] That avowal is consistent with the Policy language and the parameters described in the parties' correspondence, and are otherwise uncontradicted in this record. Plaintiffs cannot rightfully

assume the appraisal panel decided issues it expressly disavowed. [Doc. 13 at 6.] Because Plaintiffs' motion depends on a premise that is entirely false, it should be summarily denied.

### III. ARIZONA APPRAISAL PANELS CANNOT RESOLVE COVERAGE DISPUTES OR ANY OTHER ISSUES OUTSIDE THE SUBMISSION AGREEMENT

Even if Plaintiff had a factual basis to believe this Appraisal Award resolved questions of causation, the Motion would still fail, because an appraisal award is void and not appropriate for confirmation if the appraisal panel exceeds its powers; the panel makes a "fundamental mistake more than mere error of judgment;" or the award itself is not ripe for judgment because extraneous issues affecting it (such as a coverage dispute) have not been resolved via litigation. *See* A.R.S. § 12-1512(A); *Hanson v. Commercial Union Ins. Co.*, 150 Ariz. 283, 286, 723 P.2d 101, 104 (App. 1986); *Hirt v. Harvey*, 118 Ariz. 543, 546, 578 P.2d 624, 627 (App. 1978); *cf. Venetian Casino Resort v. Lehrer McGovern Bovis*, 92 Fed. App'x 402, 403 (9th Cir. 2004) ("Tentative or interim awards should not be confirmed.").

Thus, while an appraisal award may bind the parties, that is only true <u>as to disputes that are resolvable via appraisal</u>. *Hirt*, 118 Ariz. at 546, 578 P.2d at 627 (decisions of arbitrators are final and conclusive "except when they conflict with the express guidelines or standards set forth or adopted in the arbitration agreement"[2]). Under Arizona law, the question of appraisability may be raised post-appraisal. *See Brake Masters Sys., Inc. v. Gabbay*, 206 Ariz. 360, 363-64, ¶ 9, 78 P.3d 1081, 1084-85 (App. 2003). And, if there is any reasonable doubt about what was intended to be submitted to appraisal, the award should not be confirmed. *See Hanson*, 150 Ariz. at 285, 723 P.2d at 103 ("Appraisers' acts in excess of authority are not binding on the parties, without ratification.") (quoting 6 Appleman, *Insurance Law and Practice* § 3946, at 612-13 (1972)); *Funk v. Funk*, 6 Ariz. App. 527, 531, 434 P.2d 529, 533 (1967).

---

[2] Although there are substantive and functional differences between appraisal and arbitration, in Arizona the two are treated similarly for procedural purposes. *Meineke v. Twin City Fire Ins. Co*., 181 Ariz. 576, 580, 892 P.2d 1365, 1369 (App. 1994).

The appraisal panel's powers here are defined by the Policy, Arizona law, and the parties' intent – all of which demonstrate causation and coverage were not subject to appraisal.

**A. The Policy Limits the Appraisal Remedy to The Amount of Loss of Each Item in Dispute**

Appraisal is a contractual, not a judicial remedy. *Hanson*, 150 Ariz. at 285, 723 P.2d at 103; *Hirt*, 118 Ariz. at 545, 578 P.2d at 626. Plaintiffs tellingly fail to provide the Court with full disclosure of the Policy's terms and instead rely on generalities regarding the historical purpose of appraisal. [*E.g.*, Doc. 13 at 7-8.] However, in the context of an insurance contract, the scope of appraisal is governed by the terms of the policy itself.[3] *Hanson*, 150 Ariz. at 286, 723 P.2d at 104; *Estate of Decamacho ex rel. Guthrie v. La Solana Care & Rehab, Inc*., 234 Ariz. 18, 23, ¶¶ 17-19, 316 P.3d 607, 612 (App. 2014) (examining specific language of arbitration provision to determine what issues were arbitrable).

Regarding appraisal, the Policy here states in relevant part:

> **Appraisal**. If *you* and *we* fail to agree on the amount of loss, either party can demand that the amount of loss be set by appraisal. . . .
>
> a.     Each party will select a competent disinterested appraiser and notify the other party of the appraiser's identity within 20 days of receipt of the written demand for appraisal.
>
> b. The appraisers will then attempt to set <u>the amount of the loss</u>

[3] To be sure: there is no general purpose of all agreements for appraisal to avoid litigation at all costs. *See, e.g., Howard v. Ferrellgas Partners, LP*, 748 F.3d 975 (10th Cir. 2014) ("[I]t remains a 'fundamental principle' that 'arbitration is a matter of contract,' not something to be foisted on the parties at all costs.") (quoting *AT&T Mobility LLC v. Conception*, 563 U.S. 333, 339 (2011)). An agreement to appraise only provides a non-judicial remedy for disputes under the terms and conditions specified in the contract. *New Pueblo Constructors, Inc. v. Lake Patagonia Recreation Ass'n*, 12 Ariz. App. 13, 16-18, 467 P.2d 88, 91-93 (App. 1970). The parties may agree to those provisions in the hopes of securing a swift, inexpensive, and binding resolution within the specified scope, but those goals do not provide a legal basis to ignore contract terms. The law remains: "Notwithstanding such public policy, an arbitrator cannot resolve issues which go beyond the scope of the submission agreement." *Clarke v. ASARCO Inc*., 123 Ariz. 587, 589, 601 P.2d 587, 589 (1979); *see also Dusold v. Porta-John Corp*., 167 Ariz. 358, 361-62, 807 P.2d 526, 529-30 (App. 1990) (rejecting "broad statements of judicial policy" in favor of enforcing intended scope of arbitration provision*); Allstate Ins. Co. v. Cook*, 21 Ariz. App. 313, 315, 519 P.2d 66, 68 (1974) (same).

of each item in dispute as specified by each party. . . .

    c.    If the two appraisers fail to agree upon the amount of the loss within 30 days, unless the period of time is extended by mutual agreement, they will select a competent, disinterested umpire and will submit their differences to the umpire. . . .

    (3) a written report of agreement . . . signed by any two (appraisers or appraiser and umpire) will set the amount of the loss of each item in dispute and will be binding upon *you* and *us*. In all instances the written report of agreement will be itemized and state separately the ***actual cash value***, replacement cost, and if applicable, the market value of each item in dispute.

. . .

    g.    *You* and *we* do not waive any rights by demanding or submitting to an appraisal and retain all contractual rights to determine if coverage applies to each item in dispute.

    h.    Appraisal is only available to determine the amount of loss of each item in dispute. The appraisers and the umpire have no authority to decide:

    (1) any other questions of fact;

    (2) questions of law;

    (3) questions of coverage; [or]

    (4) other contractual issues . . . .

[Policy, **Ex. A**, at 21-22 (underlined emphasis added).]

    The Policy expressly limits the appraisal panel's authority to setting the "amount of the loss of each item in dispute." [Policy, **Ex. A**, at 21-22, ¶¶ b, h.] By contract, the appraisal panel has no authority to resolve any other question of fact, law, causation, or coverage. [Policy, **Ex. A**, at 21, ¶ h.] And, the Policy expressly preserves State Farm's contractual rights to determine whether coverage applies to each item. [Policy, **Ex. A**, at 21, ¶ g.]

    These key provisions defining the powers and scope of the appraisal panel's authority

8

are conspicuously omitted from the Motion. But those provisions are unambiguous and must be applied as written. *Liberty Ins. Underwriters, Inc. v. Weitz Co*., 215 Ariz. 80, 83, ¶ 8, 158 P.3d 209, 212 (App. 2007). Per this Policy, the only appraisable issue is the amount of loss of each item in dispute. State Farm unequivocally "retain[ed] all contractual rights to determine if coverage applies to each item in dispute." [Policy, **Ex. A**, at 21, ¶ g.] Nothing in the Policy creates a right to payment of non-covered damages simply because they were valued in appraisal, by a panel that did not have authority to and did not consider coverage or loss causation.

Nor is there any doubt or ambiguity in the Policy as to what issues were and were not appraisable. Accordingly, Plaintiffs' reliance on vague concepts of liberal construction and deference to the appraisal process [Doc. 13 at 5] and authorities and arguments wholly divorced from the Policy language [Doc. 13 at 7-8] are wholly misplaced. Applying the plain language of this Policy, Plaintiffs' Motion lacks merit and should be denied.

**B. Arizona Law Limits the Appraisal Remedy to Setting the Amount of Loss**

The unambiguous language of the Policy's appraisal provision is consistent with Arizona law. In *Hanson*, the Arizona Court of Appeals confirmed that appraisers have only "limited powers:"

> The function of appraisers is to determine the amount of damage resulting to various items submitted for their consideration. It is certainly not their function to resolve questions of coverage and interpret provisions of the policy.

150 Ariz. at 286, 723 P.2d at 104 (quoting *Jefferson Ins. Co. v. Superior Court*, 475 P.2d 880, 883 (Cal. 1997)); *see also* Plitt, Steven, et al., 15 Couch on Insurance § 209:8 (3d ed. 2021) ("The determination of the amount of loss sustained by the insured is, of course, to be distinguished from the insured's right, if any, to recover under the policy.").

Like the Policy itself, Arizona law recognizes that appraisal is not available for non-covered losses and cannot be used as a substitute for coverage litigation, as Plaintiffs attempt

here. *See 6700 Arrowhead*, 2012 WL 5868969, *3 (describing the insurer's choice to litigate coverage issues after appraisal as "something it is entitled to do"); *Denby v. Am. Family Ins.*, No. CV-17-02648-PHX-SMB, 2019 WL 4081143, *4 (D. Ariz. 2019) ("[A]ccording to cases in Arizona, submission to such appraisal process does not preclude Defendant from challenging the 'amount of loss' if it believes the amount includes losses not covered by the Policy."). An appraisal award that relates "to the issue of the amount of the [insurer]'s ultimate liability on the insurance policy" is, undoubtedly, beyond the scope of appraisal and void. *Hanson*, 150 Ariz. at 285, 287, 723 P.2d at 103, 105. Therefore, even if the Motion were not based on a flawed factual premise, it fails under Arizona law.[4]

### C. State Farm Never Submitted Non-Covered Losses to the Appraisal Panel for Valuation

Even if the Policy and Arizona law were not already conclusive on the bounds of the appraisal panel's authority, the parties' agreement also limits the scope. Thus, inquiry into what issues the parties to the Policy agreed to submit to appraisal is appropriate. *See 6700 Arrowhead*, 2012 WL 5868969, *3 (acknowledging that the insurer preserved coverage defenses in the parties' pre-appraisal communications).

Here, State Farm accepted appraisal only on the condition that it <u>not</u> be used as a vehicle to reconsider State Farm's coverage decision. State Farm thus specifically reserved all rights and defenses regarding this claim, including the right to deny or dispute coverage as to each item in dispute after appraisal. [Policy, **Ex. A**, at 22, ¶ (g); Letter, **Ex. F**.] State Farm <u>did not consent</u> to resolution of causation, coverage, or liability issues via appraisal, and Plaintiffs knew that when they proceeded to appraisal. There was certainly no agreement to appraise issues

---

[4] The Court need not look outside the state to resolve the Motion. To the extent the Court chooses to do so, other jurisdictions have likewise held that causation determinations, if made or implied, are outside appraisers' authority. *E.g., Lam v. Allstate Indem. Co.*, 755 S.E.2d 544 (Ga. App. 2014) ("Here, although [the insurer] had conceded that there was wind damage to [the insured's] roof and agreed to pay for it, the parties could not agree upon the extent of the damage – how much of the roof was damaged by the wind. Their disagreement, therefore, was over coverage, which is not a proper basis for an appraisal."); *accord Rogers v. State Farm Fire & Cas. Co.*, 984 So. 2d 382, 392 (Ala. 2007); *Munn v. Nat'l Fire Ins. Co. of Hartford*, 115 So. 2d 54, 57 (Miss. 1959).

excluded from appraisal in the Policy.

In sum, pursuant to Arizona case law, the Policy terms, and the parties' communications, the appraisal panel was only authorized to decide "the amount it would cost to repair damage, irrespective of coverage questions," or issues of law or disputed fact. *Denby*, 2019 WL 4081143, at *4. Therefore, the appraisal panel could not, as a matter of contract or common law, create coverage or contract liability for damages for which State Farm had already denied coverage, and that it did not agree to submit to appraisal. *See Hanson*, 150 Ariz. at 287, 723 P.2d at 105. That is precisely what Plaintiffs seek via this Motion, and it must be denied.

## IV.  **ARIZONA COURTS DO NOT HOLD THAT AN APPRAISAL PANEL'S AUTHORITY INCLUDES RESOLVING QUESTIONS OF CAUSATION**

Even if this were a dispute about "causation" (it is not), and the Policy language did not preclude the appraisal panel from resolving causation disputes (it does), the Motion still fails. Although Plaintiffs argue that determining the cause of damage is "essential to their [the appraisers'] assigned task" [Doc. 13 at 8], no Arizona court has held that an appraisal panel conclusively decides loss causation.

In truth, causation and coverage are not severable concepts. The Policy relies on causation as the primary means to distinguish covered losses from not covered losses. In fact, that interdependence is demonstrated in all aspects of the Policy – in describing the extension, exclusions, and conditions of coverage. [*See generally* Policy, **Ex. A**.] Moreover, there is no evidence or authority suggesting appraisal is an appropriate substitute for insurance adjusters' coverage evaluations. An insurance adjuster is specifically trained to understand and apply policy definitions, insuring clauses, and exclusions to the particular facts presented, and tasked with doing so in good faith. Appraisers are not trained in the contract whatsoever; they are only retained to set "the amount of loss of each item in dispute as specified by each party." Thus, although appraisers may need *to consider* the cause of damage in entering an appraisal award on a disputed scope of loss, the Andersons' cited authority stands for little else.

11

This Court applying Arizona law has held that appraisers are <u>not</u> empowered to determine causation. For example, in *Speros*, this Court declined to confirm an appraisal award as premature because, like here, the insurer disputed that the damage that had been valued was caused by a covered event. *Speros v. Sentinel Ins. Co.*, No. CV-14-00224-PHX-JJT, 2018 WL 1536389, *2, 5 (D. Ariz. 2018). Relying on *Hanson*, the Court explained that causation must be determined by the jury:

> It is the function of the appraisers to arrive at a figure representing appraised damages for a covered event . . . . <u>It is for the Court, or the ultimate finder of fact, to determine causation of the damage to the home – in other words, whether the appraisers are right or wrong about the scope of causation</u>. […]

> This is a case in which the evidence indicates that multiple events may have caused damage to Plaintiff's property, and the Court has only found that the parties agreed as to coverage for damage arising from the courtyard water line leak – damage on which the Appraisal Award has now put an itemized value. However, <u>the Court or finder of fact [not the appraisal panel] must determine causation</u>, and the Appraisal Award can then be overlain on that causation determination to resolve the value of damages, which may be the Appraisal Award's larger number, its smaller number, or some other number within the Award, depending on the limits of causation. For this reason, the Court cannot yet confirm the Appraisal Award.

*Speros*, 2018 WL 1536389, at *5. *See also San Souci Apts. v. Nat'l Sur. Corp.*, No. CV-12-2389-PHX-GMS, 2013 WL 428091, *1-2 (D. Ariz. 2013) ("The issue of whether the roof tiles were damaged by the hail storm and whether the source of the damage is outside of the policy limits is not a dispute about the amount of loss that all parties agree to be covered. It is, therefore, not within the scope of the appraisal provision."); *6700 Arrowhead*, 2012 WL 5868969, at *2 (question of whether some damage was caused by the hailstorm, as necessary to trigger coverage, "lies beyond the scope of the appraisal clause" to resolve disputes regarding the amount of loss); *Denby*, 2019 WL 4081143, at *4 (concluding that appraiser decision on cause of loss are not final because "[a]fter the appraiser makes a determination as

to the amount of loss attributable to each cause, Defendant may still challenge coverage").

Few of the cases Plaintiffs rely on squarely address the issue of appraisers' authority vis-à-vis coverage and loss causation at all.[5] Careful reading of others confirms they are inapposite or unpersuasive. For example, the question presented in Plaintiffs' primary authority, *Harvey Property Management Co. v. Travelers Indemnity Co*., No. 2:12-CV-01536-SLG, 2012 WL 5488898 (D. Ariz. Nov. 6, 2012), only concerned the *timing* of the court's resolution of liability and causation disputes – in other words, whether the insurer could be compelled to participate in appraisal if the parties did not agree on the scope of the covered loss, or whether issues of liability and causation must be resolved by the court before an appraisal occurs. *Id*. at *3-4. The *Harvey* court found "the disputed language of the policy at issue" was "not without ambiguity." *Id*. at *5. The *Harvey* court thus relied on a general preference for appraisal as an alternative process to resolve disputes about value and authorized the appraisal panel to resolve a panoply of "question[s] of fact." *Id*.

*Harvey* has no application here.[6] Most notably, this Policy's appraisal provision is materially different than that at issue in *Harvey*, providing more detail and explanation as to both the appraisal process and its limitations. This Policy explicitly prohibits appraisers from deciding "any other question of fact" or any "questions of law." Moreover, Plaintiffs do not argue the Policy is ambiguous; it is not and, when read as a whole, does not give appraisers authority to resolve State Farm's liability through causation, coverage, or other determinations

---

[5] For example, *Ori v. American Family Mutual Insurance Co.,* No. CV-2005-697-PHX-ROS, 2005 WL 3079044 (D. Ariz. Nov. 15, 2005), does not address loss causation at all; it is a true valuation dispute as to whether the fire-related damage could be cleaned with or without removing the ceiling (at a higher cost).

[6] *Harvey* also confusingly frames the "factual" dispute as "what is the amount of the claimed loss that [is] covered under the policy's coverage for wind and hail" – undoubtedly, an issue of coverage, not causation the appraisal panel is expressly precluded from considering in this Policy – and separately relies in part on a principle not observed in Arizona that ambiguities in insurance policies must be resolved in favor of the insured. *See Fid. Nat'l Title Ins. Co. v. Osborn III Partners*, 250 Ariz. 615, 624, ¶ 38, 483 P.3d 237, 246 (App. 2021) (holding that ambiguities in insurance policies are construed in favor of the insured only if they cannot be interpreted by applying other rules of construction), *vacated in part on other grounds*, 254 Ariz. 440, 524 P.3d 820 (2023).

outside of valuation.

Regardless, the *6700 Arrowhead* process represents an advancement from *Harvey*, as well as the majority view on how causation and coverage disputes are handled in the context of appraising the amount of loss. *See, e.g., Phila. Indem. Ins. Co. v. WE Pebble Point*, 44 F. Supp. 3d 813 (S.D. Ind. 2014); *St. Charles Parish Hosp. Serv. Dist. No. 1 v. United Fire & Cas. Co.*, 681 F. Supp. 2d 748 (E.D. La. 2010); *North Glenn Homeowners Assn. v. State Farm Fire & Cas. Co.*, 854 N.W.2d 67 (Iowa App. 2014); *Quade v. Secura Ins.*, 814 N.W.2d 703 (Minn. 2012); *Morrow v. State Farm Fire & Cas. Co.*, 592 F. Supp. 3d 672 (E.D. Tenn. 2022); *State Farm Lloyds v. Johnson*, 290 S.W.3d 886 (Tex. 2009); *Villas at Winding Ridge v. State Farm Fire & Cas. Co.*, 942 F.3d 824 (7th Cir. 2019). All of these courts hold that although an insurer is required to participate in appraisal when it accepts coverage for a loss that is covered in whole or in part, and although the appraisers' assessment of the amount of loss may include some consideration of loss causation, participation in appraisal does not compel the insurer to pay an appraisal award that includes damages that are not covered. Any such causation determinations are subject to further review by the courts. *See Quade*, 814 N.W.2d at 707-08 ("It is self-evident that [the insurer]'s policy does not obligate it to pay for repairs due to wear and tear or other excluded perils. Whether the appraisal award will be conclusive on all issues will depend on the nature of the damage, the possible causes, the parties' dispute, and the structure of the appraisal award.").

As one court aptly observed, the appraisal process is not intended "to endorse [the insured]'s theory of its entitlement to a larger recovery" or "the results of the appraiser's fact-finding as binding notwithstanding any legal defenses of [the insurer]." *See WE Pebble*, 44 F. Supp. 3d at 819. "It is simply to honor the terms of the parties' contract – with the incidental hope that the process may better narrow and frame the facts that underlie what remain of their disputes about causation and coverage." *Id*. This Court should affirm those principles, enforce the appraisal limitations in the Policy and Arizona law, and deny the Motion accordingly.

## V.    PLAINTIFFS DO NOT HAVE A STATUTORY BASIS FOR AN INTERIM AWARD OF FEES OR INTEREST

Plaintiffs request the Court award them attorneys' fees and interest. [Doc. 13 at 11-12.] In Arizona, attorneys' fees are only if authorized by a statute or contract. *See, e.g., Roubos v. Miller*, 214 Ariz. 416, 420, ¶ 21, 153 P.3d 1045, 1049 (2007). Plaintiffs' reliance on a purported hardship is insufficient and must be rejected. *Cf. Hunt Inv. Co. v. Eliot*, 154 Ariz. 357, 361, 742 P.2d 858, 862 (App. 1987) ("It is not the judiciary's place to expand the types of recoverable costs in the absence of legislative authority, even though a public policy may be served.").

Plaintiffs separately suggest that an award would be appropriate under A.R.S. § 12-341.01(A) (authorizing an award of reasonable attorneys' fees to the successful party in "any contested action arising out of a contract"). But even if the Motion is granted, the "successful party" under A.R.S. § 12-341.01 is the one who <u>ultimately</u> prevails. *See U.S. Insulation v. Hilro Constr. Co.*, 146 Ariz. 250, 259, 705 P.2d 490, 499 (App. 1985). Logically, no such determination as to ultimate success can be made until litigation has concluded. *See Kim v. Mansoori*, 214 Ariz. 457, 461, ¶ 12, 153 P.3d 1086, 1090 (App. 2007) (recognizing an award of fees under A.R.S. § 12-341.01 "generally presuppose[s] a prior decision on the merits"). Section 12-341.01 does not provide a basis for fees where, as here, the merits of the entire claim have not been resolved. *See, e.g., Hilro Constr.*, 146 Ariz. at 259, 705 P.2d at 499 ("No decision on the merits has been made in this case and, therefore, we make no ruling on the attorney's fees issue at this time.").

Plaintiffs cite no basis for an award of interest, and the request should likewise be denied.

## VI.    PLAINTIFFS ARE NOT ENTITLED TO PRELIMINARY RELIEF

Finally, to the extent Plaintiff seeks relief in advance of an adjudication of his civil claims on the merits, the request utterly fails to comply with Arizona law.  Preliminary relief in anticipation of a future judgment of liability is only appropriate when a party shows they are likely to succeed on the merits and that a balance of equities and policy considerations weigh

favor relief. *IB Prop. Holdings v. Rancho Del Mar. Apts. LP*, 228 Ariz. 61, 64, ¶ 9, 263 p.3d 69, 72 (App. 2011).

Plaintiffs have not argued or shown a likelihood of success on the merits of their claim that the appraisal award is comprised entirely of covered losses. There has been no discovery on the issue, and this is not a motion for summary judgment. Moreover, the unambiguous Policy language excludes coverage for the alleged losses Plaintiffs forced into the appraisal process after State Farm partially denied coverage. And Plaintiff has not argued, let alone established, any public policy that would support entry of a pre-trial, pre-judgment order compelling payment of amounts assigned for losses the parties dispute are covered by the Policy. Public policy undoubtedly favors disposition of cases on their merits after full and fair discovery and an opportunity to be heard. *See, e.g., Baker v. Midland Funding LLC*, CV-23-08169-PHX-SPL, 2020 WL 5232808, *3 (D. Ariz. 2020). To the extent the motion has the effect of granting preliminary relief, Plaintiffs have not met their burden of demonstrating their entitlement, and it must be denied.

## VII.   CONCLUSION: PLAINTIFFS' MOTION IS UNSUPPORTED BY FACT OR LAW AND BROUGHT SOLELY TO HARASS AND ANNOY STATE FARM

Plaintiffs' Motion should be denied. State Farm does not contend that this appraisal panel erred with respect to factual determinations or legal interpretations. Rather, State Farm contends, and the record reflects, that the appraisal panel did not have authority to, and did not, resolve the question essential to enforcing the Appraisal Award: does the State Farm Policy provide *coverage* for the items appraised?

In sum, Plaintiffs' argument is based on an entirely false assertion that the Appraisal Award represents a causation determination, when the Award itself explicitly states that values were provided "without regard to . . . loss causation." Even still, the Policy and Arizona law prohibit an appraisal panel from deciding questions of fact, causation, or coverage outside the submission agreement and/or unrelated to valuation of a particular item. Accepting the Appraisal Award as a determination of State Farm's liability is akin to allowing a panel of two

to veto State Farm's coverage decision in violation of the Policy, *Hanson*, and the U.S. District Court cases interpreting and applying it. For all of these reasons, Plaintiffs' Motion must be denied and an award of fees entered in State Farm's favor pursuant to 28 U.S.C. § 1927 and A.R.S. § 12-349(a).

DATED this 2nd day of February, 2024.

BROENING OBERG WOODS & WILSON, P.C.

By */s/ Kelley M. Jancaitis*
Robert T. Sullivan
Kelley M. Jancaitis
2800 North Central Avenue, Suite 1600
Phoenix, Arizona 85004
*Attorneys for Defendant State Farm Fire and Casualty Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd day of February, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Douglas F. Dieker
DIEKER COPPLE, PLLC
14256 North Northsight Blvd., Suite 110
Scottsdale, Arizona 85260
douglas@diekercopplelaw.com
*Attorney for Plaintiffs*

By */s/ Deane Fields*

17