**NOT FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Donald Grasse, et al., | No. CV-23-02435-PHX-SRB |
| Plaintiffs, | **ORDER** |
| v. | |
| State Farm Fire and Casualty Company, et al., | |
| Defendants. | |

Before the Court is Plaintiffs Donald and Tamara Grasse's Motion to Enforce the Appraisal Award ("Motion") on their insurance claim. (Doc. 13, Mot. to Confirm Appraisal Award ("Mot.").) The Court will deny the Motion.

**I.     BACKGROUND**

**A.     Factual Background**

This case arises out of an insurance dispute between Plaintiffs and Defendant State Farm Fire and Casualty Company. (*See* Doc. 1-1, Ex. A, Compl.) Plaintiffs' home is insured under a homeowner's policy ("Policy") with Defendant. (*Id.* ¶ 5; *see also* Doc. 14-1, Ex. A, State Farm Homeowners Policy ("Policy").) On July 12, 2021, a storm damaged Plaintiffs' home in Scottsdale, Arizona. (Compl. ¶¶ 5, 7.) That same day, Plaintiffs made a claim for the loss to Defendant. (*Id.* ¶ 8.) Defendant investigated the claim and "determined that much of the reported damage . . . could not have been caused by [the] July 2021 storm," but was rather caused by "wear and tear, design defects, accumulated debris, and animal activity, none of which are covered under the Policy." (Doc. 14, Resp. in Opp'n to Mot.

("Resp.") at 3; *see also* Doc. 14-1, Ex. C, ("Storm Damage Assessment Report") at 62–66.) Defendant estimated the amount of loss to Plaintiffs' home to be $24,156.55 replacement cost value ("RCV"), and after applying depreciation and Plaintiffs' deductible, issued a partial coverage denial and paid Plaintiffs $11,818.35 "for the limited storm-related damages observed." (Resp. at 3; Mot. at 2; *see also* Doc. 13-1, Ex. B, ("Claim Estimate") at 7; Doc. 14-1, Ex. D. ("State Farm Mar. 17, 2022, Letter to Scott Lampman") at 70.) On July 4, 2021, Plaintiffs' public adjuster, Scott Lampman, estimated that the amount of loss to Plaintiffs' home was $264,130.43 RCV. (Mot. at 2; Doc. 13-1, Ex. C, ("Lampman Estimate") at 63.) Because there was a dispute as to the amount of loss, on June 10, 2022, Plaintiffs demanded to enter the appraisal process pursuant to the Policy, to which Defendant agreed. (Mot. at 2; Resp. at 3–4; *see also* Doc. 14-2, Ex. E, ("Demand for Appraisal") at 2; Doc. 13-1, Ex. D, ("State Farm June 24, 2022, Letter to Donald and Tamara Grasse").) The Policy includes, in relevant part, the following provision ("Appraisal Clause"):

> **Appraisal**. If *you* and *we* fail to agree on the amount of loss, either party can demand the amount of the loss be set by appraisal. . . . At least 10 days before demanding appraisal, the party seeking appraisal must provide the other party with written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed.
>
> . . .
>
> b.   The appraisers will then attempt to set the amount of loss of each item in dispute as specified by each party, and jointly submit to each party a written report of agreement signed by them
>
> . . .
>
> The written report of agreement will set the amount of loss of each item in dispute and will be binding upon *you* and *us*.
>
> g.   You and we do not waive any rights by demanding or submitting to an appraisal, and retain all contractual rights to determine if coverage applies to each item in dispute.
>
> h.   Appraisal is only available to determine the amount of loss of each item in dispute. The appraisers and the umpire have no authority to decide:
>
>    (1)   any other questions of fact;
>    (2)   questions of law;

    (3) questions of coverage;
    (4) other contractual issues;

(Policy at 26–27.)

On July 12, 2023, the appraisal panel issued an award setting the amount of loss to Plaintiffs' home ("Appraisal Award") at $89,186.35 RCV and $82,775.77 actual cash value ("ACV"). (Mot. at 3; Resp. at 4–5; *see also* Doc. 13-1, Ex. A, Appraisal Award at 2–3.) The Appraisal Award also include an itemized list of all items that were valuated ("Itemized Appraisal Valuation"). (Doc. 13-1, Ex. F, ("Itemized Appraisal Valuation").) The appraisal panel stated that it set the amount of loss "without regard to policy coverage, loss causation, or any other terms, conditions, provisions, or exclusions of the [Policy]." (Appraisal Award at 2.) The panel also stated that the Appraisal Award "acknowledges that the coverages listed in the [P]olicy may or may not extend to the individual broken down items or any applied overhead and profit shown in the [A]ppraisal [A]ward totals . . . or the attached [Itemized Appraisal Valuation]." (*Id.* at 3; *see also* Itemized Appraisal Valuation.) On August 14, 2023, Defendant notified Plaintiffs that it would deduct $44,737.70 from the Appraisal Award and would pay Plaintiffs an additional payment of $19,689.13.[1] (Mot. at 4; Resp. at 5; *see also* State Farm Aug. 14, 2023, Letter to Scott Lampman at 124–26.)

### B. Procedural Background

Plaintiffs filed their Complaint in the Superior Court of Maricopa County on October 31, 2023, asserting claims for breach of contract and breach of the covenant of good faith and fair dealing. (*See* Compl.) The action was removed to this Court on November 21, 2023. (Doc. 1, Not. of Removal.) Plaintiffs filed the Motion on January 19, 2024, arguing that the Appraisal Award is a final and binding determination as to the amount of loss caused by the July 12, 2021 storm. (*See* Mot.) Defendant filed its Response on February 2, 2024, to which Plaintiffs replied on February 8, 2024.[2] (Resp.; Doc. 15, Reply.)

---

[1] Defendant's payment also deducted $5,820.17 in depreciation value. (Mot. at 4; Doc. 13-1, Ex. G, ("State Farm Aug. 14, 2023, Letter to Scott Lampman") at 125.)
[2] On March 15, 2024, Defendant filed a Notice of Supplemental Authority. (Doc. 22, 03/14/24 Order; Doc. 23, Def.'s Not. of Suppl. Auth in Resp. to Mot.)

## II.    LEGAL STANDARD & ANALYSIS

This Court has the authority to confirm an appraisal award. *See* Ariz. Rev. Stat. § 12-1511; *Morgan v. Carillon Inv., Inc.*, 109 P.3d 82, 83 (Ariz. 2005) (en banc) (per curiam); *Meineke v. Twin City Fire Ins. Co.*, 892 P.2d 1365, 1369 (Ariz. Ct. App. 1994) (explaining that because "appraisal is analogous to arbitration," Arizona courts "apply principles of arbitration law to [disputes] regarding an insurance policy appraisal clause"). "Apart from questions of fraud or corruption, 'the decisions of the arbitrators on questions of fact and of law are final and conclusive, except when they conflict with express guidelines or standards set forth or adopted in the arbitration agreement.'" *Hirt v. Hervey*, 578 P.2d 624, 626 (Ariz. Ct. App. 1978) (citation omitted). The court may decline to confirm an award where the "[appraisers] exceeded their powers." *Transnat'l Ins. Co. v. Simmons*, 507 P.2d 693, 698 (Ariz. Ct. App. 1973) (quoting Ariz. Rev. Stat. § 12-1512). Similarly, the Court cannot interpret an appraisal award to resolve issues that were not decided by the appraisal panel. *See Heartland v. State Farm Fire & Cas. Co.*, No. CV 23-00449-PHX-JJT, 2024 WL 620825, at *2 (D. Ariz. Feb. 14, 2024) (denying a motion to enforce appraisal where enforcing the appraisal award would "resolve[] an issue that was not submitted [to the appraisal panel], was precluded by the policy, and was thus outside [the appraisal panel's] authority").

### A.    Appraisal Award

Under Arizona law, "[a]n insurance policy is a contract, and in an action based thereon the terms of the policy must govern." *Home Indem. Co. v. Wilson*, 489 P.2d 244, 246 (Ariz. 1971). Arizona courts construe provisions in insurance contracts according to their plain and ordinary meaning. *First Am. Title Ins. Co. v. Johnson Bank*, 372 P.3d 292, 294 (Ariz. 2016); *see also Dairyland Mut. Ins. Co. v. Andersen*, 433 P.2d 963, 965 (Ariz. 1967) ("[W]here the provisions of the contract are plain and unambiguous upon their face, they must be applied as written, and the court will not pervert . . . the plain and ordinary meaning or add something to the contract . . . which the parties have not put there."). In addition, "the terms of an insurance policy must be construed to protect the reasonable

expectations of the person purchasing the insurance." *Planet Ins. Co. v. Mead Reinsurance Corp.*, 789 F.2d 668, 671 (9th Cir. 1986) (citing *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 682 P.2d 388, 396–97 (Ariz. 1984)). The facts of each appraisal case "must be considered in light of strong policy approving of arbitration." *Meineke*, 892 P.2d at 1369–70; *see* Ariz. Rev. Stat. §§ 12-1501–02. However, the authority of an appraisal panel is limited in scope to issues outlined in the insurance policy and any applicable submission agreement. *See Hanson v. Com. Union Ins. Co.*, 723 P.2d 101, 103–04 (Ariz. Ct. App. 1986) ("It is . . . settled that, like arbitrators, appraisers have no authority to adjudicate issues beyond those submitted to them.")

Plaintiffs ask the Court to confirm the Appraisal Award because "[t]he appraisers found that there was causally related storm damage to all the property included in the Appraisal Award." (Mot. at 9.) Defendant counters that Plaintiffs' assertion is contradicted by the record. (Resp. at 5.) The Court agrees with Defendant. The Appraisal Award is devoid of any language indicating that the panel considered causation in setting the amount of loss. (Appraisal Award at 2–3.) Rather, the Appraisal Award states that it "determined the following [items] for loss and value of same" "without regard to policy coverage, *loss causation*, or any other terms, conditions, provisions, or exclusions of the [Policy]". (*Id.* at 2 (emphasis added).) Moreover, the Policy provides that "[a]ppraisal is only available to determine the amount of loss of each item in dispute" and that the panel has "no authority to decide . . . any other questions of fact" or "questions of coverage." (Policy at 27.) The Policy also states that neither party "waive[s] any rights by demanding or submitting to an appraisal, and retain[s] all contractual rights *to determine if coverage applies* to each item in dispute."[3] (*Id.* (emphasis added).)

---

[3] Defendant cites to its June 24, 2022 letter to Donald and Tamara Grasse to explain its "position on the scope and purpose of" the appraisal process. (Resp. at 4; *see also id.* at 3, 10; State Farm June 24, 2022, Letter to Donald and Tamara Grasse.) But because Defendant has not shown that the letter was a formal submission agreement agreed upon by both parties, the Court will not consider it in assessing the scope of the appraisal panel's authority. *See Le v. State Farm Fire & Cas. Co.*, No. CV-22-00044-TUC-SHR (LAB), 2022 WL 17959435, at *4 (D. Ariz. Dec. 27, 2022) (disagreeing with an insurer's argument that a letter it sent plaintiffs properly restricted the scope of an appraisal panel's authority because plaintiffs did not agree to the letter and holding that a lack of objection to such a letter does not constitute assent).

Citing *Harvey Property Management Co. v. Travelers Indemnity Co.*, No. 2:12-CV-01536-SLG, 2012 WL 5488898 (D. Ariz. Nov. 6, 2012), and *Le v. State Farm Fire and Casualty Co.*, CV 22-00044-TUC-SHR (LAB), 2022 WL 4105503 (D. Ariz. Sept. 8, 2022), Plaintiffs assert that setting the amount of loss necessarily includes a determination of causation. (*See* Mot. at 7–11; Reply at 4–5.) Both cases are distinguishable. In *Harvey*, plaintiffs had filed a motion to *compel* appraisal, and the court merely found that a dispute as to loss causation did not prevent the parties from proceeding to the appraisal process. 2012 WL 5488898, at *2–5. The court in *Harvey* also found that an appraisal panel may consider causation in setting the amount of loss. *Id.* at *5 ("This question [of causation] may be properly resolved in the appraisal process.") However, *Harvey* did not hold that courts must *assume* appraisers have resolved this fact issue, particularly where, as here, the panel has expressly disclaimed making any findings as to causation.[4] *See id.*; (Appraisal Award at 2.) In *Le*, on the other hand, the appraisers were explicitly instructed to consider causation in setting the amount of loss, which was reflected in the appraisal award itself.[5] 2022 WL 4105503, at *5 (explaining that "the appraisers here were instructed to opine as to the amount of damage *caused by fire*" and that "the appraisers returned a report in accordance with those instructions"), *report and recommendation adopted*, 2022 WL 17959435 (D. Ariz. Dec. 27, 2022).

The parties' dispute instead resembles *Heartland v. State Farm Fire & Casualty Co.* In *Heartland*, plaintiffs' roof was damaged by a storm, and the parties proceeded to the appraisal process. 2024 WL 620825, at *1. Defendant argued that the amount of loss set by the appraisal panel included repairs not covered by the policy and only paid a portion of the appraisal award. *Id.* Plaintiffs disagreed, arguing that the appraisal panel's umpire found that the storm had damaged every item in dispute. *Id.* The Court found, however,

---

[4] Plaintiffs' citation to *Ori v. American Family Mutual Insurance Co.*, No. CV-2005-697-PHX-ROS, 2005 WL 3079044 (D. Ariz. Nov. 15, 2005) is distinguishable for these same reasons. (Mot. at 9–10; Reply at 6.)

[5] Plaintiffs also cite several out-of-circuit cases applying the law of other states for additional support that the amount of loss necessarily included a causation determination. (Mot. at 9–11; Reply at 5–7.) However, the Court is unaware of any Arizona courts that have adopted this theory regarding the amount of loss, and the Court declines Plaintiffs' invitation to do so here.

that the umpire "did not state the damage was caused *exclusively* by the storm," and reasoned that "[p]laintiffs' interpretation of the appraisal assumes the panel answered questions of fact and thus, coverage, which would violate the policy." *Id.* at \*2 (explaining that the parties' policy "restrict[ed] the appraisal panel to determine the amount of loss of each item in dispute, and state[d] the panel has no authority to decide any other questions of fact or coverage"). The *Heartland* court denied plaintiffs' motion to confirm their appraisal award, reasoning that doing so "would mean that the panel resolved an issue that was not submitted, was precluded by policy, and was thus outside its authority." *Id.*

Because the appraisal panel expressly stated that it did not resolve any issues of causation or coverage, the Court denies Plaintiffs' Motion. *See id.*

### B.     Attorneys' Fees

Plaintiffs also request reasonable attorneys' fees under A.R.S. § 12-341.01. (Mot. at 11.) "[I]n federal cases where the controlling substantive law is state law, . . . attorneys' fees can be awarded under state law." *Poehler v. Fenwick*, No. 2:15-CV-01161, 2016 WL 1428095, at \* 2 (D. Ariz. Apr. 12, 2016). A party requesting an award of attorneys' fees must show that he is (1) eligible for a fee award, (2) entitled to an award, and (3) requesting a reasonable amount of fees. *See* LRCiv 54.2(c). To be eligible for an award of attorneys' fees under Arizona law, "(1) the moving party must be 'the successful party,' and (2) the action must 'aris[e] out of a contract.'" *Rindlisbacher v. Steinway & Sons Inc.*, No. CV-18-01131-PHX-MTL, 2021 WL 2434207, at \*4 (D. Ariz. May 26, 2021) (quoting § 12-341.01(A)). A party is "successful" if he "accomplished the result sought in the litigation." *Id.* (*quoting Schweiger v. China Doll Rest., Inc.*, 673 P.2d 927, 933 (Ariz. Ct. App. 1983)). Because the Court denies Plaintiffs' Motion, they are not "the successful party" under § 12-341.01(A) and are ineligible for a fee award. *Id.* The Court denies Plaintiffs' request for reasonable attorneys' fees.

## III.     CONCLUSION

The Court denies Plaintiffs' Motion to Enforce the Appraisal Award because the appraisal panel did resolve issues of causation or coverage. The Court also denies

Plaintiffs' request for reasonable attorneys' fees because they are not eligible for a fee award under A.R.S. § 12-341.01.

**IT IS ORDERED** denying Plaintiffs' Motion to Enforce the Appraisal Award (Doc. 13).

**IT IS FURTHER ORDERED** denying Plaintiffs' request for reasonable attorneys' fees (Doc. 13).

Dated this 2nd day of July, 2024.

Susan R. Bolton
United States District Judge