LAW OFFICES
**BROENING OBERG WOODS & WILSON**
PROFESSIONAL CORPORATION
2800 N. CENTRAL AVE., SUITE 1600
PHOENIX, ARIZONA 85004
(602) 271-7700

Robert T. Sullivan/Bar No. 022719
rts@bowwlaw.com
Minute Entries/Orders
cjg@bowwlaw.com
*Attorneys for Defendant State Farm*
*Fire and Casualty Company*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Donald Grasse and Tamara Grasse, husband and wife,<br><br>Plaintiffs,<br><br>vs.<br><br>State Farm Fire and Casualty Company, an Illinois Corporation, John and Jane Does I-X; XYZ Partnerships I-X; ABC Corporations I-X,<br><br>Defendants. | Case No. 2:23-cv-02435-SRB<br><br>**STATE FARM'S STATEMENT OF FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

Defendant State Farm Fire and Casualty Company ("State Farm") hereby submits its separate Statement of Facts in Support of its Motion for Summary Judgment.

1.     Plaintiffs Donald Jr. and Tamara Grasse are the named insureds on a State Farm homeowners' policy ("the Policy") covering real property located at 10040 E. Happy Valley Road, Unit 70, Scottsdale, Arizona 85255. **Exhibit A**, Homeowners Policy Renewal Declarations, SF—GRASSE001368-0013670

2.     The home was built in 1998 and retained its original roof with only nominal repairs. **Exhibit A** at SF-GRASSE001368; **Exhibit B**, Deposition of Donald Grasse dated June 5, 2024, at 10:12-14.

3.    The Policy states in relevant part:

## SECTION I – LOSSES INSURED

**COVERAGE A – DWELLING**

*We* will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy. However, loss does not include and *we* will not pay for, any *diminution in value*.

## SECTION I – LOSSES NOT INSURED

1. **We** will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

   g.  wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown;

   l .  all animals, birds, or insects.
       (1) This includes:
           (a)   nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects;

           (b)   costs to remove animals, birds, or insects from the covered property; and

           (c)   costs to prevent the animals, birds, or insects from returning to the property;

       (2)  However, *we* will pay for:

           (a)   losses caused by wild bears or deer; and

           (b)   the breakage of glass or safety glazing material that is a part of a **building structure**, when caused by animals, birds, or insects; or

   However, *we* will pay for any resulting loss from items a. through l. unless the resulting loss is itself a Loss Not Insured as described in this Section.

3. **We** will not pay for, under any part of this policy, any loss consisting of one or more of the items below. Further, **we** will not pay for any loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to, or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

   a.  conduct, act, failure to act, or decision of any person, group, organization, or governmental body whether intentional, wrongful, negligent, or without fault;

   b.  defect, weakness, inadequacy, fault, or unsoundness in:
       (1)  planning, zoning, development, surveying, or siting;
       (2)  design, specifications, workmanship, repair, construction, renovation, remodeling, grading, or compaction;
       (3)  materials used in repair, construction, renovation, remodeling, grading, or compaction; or
       (4)  maintenance;

   of any property (including land, structures, or improvements of any kind) whether on or off the residence premises; or

   c.  weather conditions

   However, we will pay for any resulting loss from items 3.a., 3.b., and 3.c. unless the resulting loss itself is a Loss Not Insured as described in this Section.

2

**Exhibit C**, State Farm Home Owners Policy, pg 12, 14 – 16

4. On February 7, 2022, Plaintiffs reported damage to the residence from a passing storm on July 12, 2021. **Exhibit D,** Fire Claim File General Information, SR-GRASSE000002

5. State Farm engaged JS Held to inspect the property. JS Held prepared a report and determined that hail caused a narrow crack in the SPF coating, which can be repaired. **Exhibit E**, JS Held Storm Damage Assessment Report dated March 14, 2022, SF-GRASSE002200-002210

6. The clay tile roofing was fractured due in part to rough handling, foot traffic, temperature and animal activity – not the wind/hail event. **Exhibit E**.

7. The water intrusion found at the garage was a result of an inadequate water shedding condition caused by latent debris and dirt, deteriorated underlayment and improper mortar at the roof; leaks to the interior were not a result of wind or hail damage. **Exhibit E**.

8. The sandcast tiles do not function as a water repellant. Instead, it is the underlayment that provides water shedding. **Exhibit E**.

9. During the inspections of the roof, other defects in the tile roof were noted, but they related to "wear, tear, deterioration, animal damages and defective workmanship" which the Plaintiffs had been advised were not covered. **Exhibit E**.

10. Before notifying State Farm of the damage, Plaintiffs contracted with adjustor Scott Lampman. **Exhibit F**, Retention Agreement of Scott Lampman dated November 29, 2021, SF-GRASSE001564.

11. Lampman provided an estimate stating a full roof replacement, as well as repairs to the inside of the home, were warranted in the amount of $277,910.32. **Exhibit G**, Estimate of Scott Lampman SF-GRASSE002349 – 002396.

12. However, Mr. Lampman never determined how much of the loss was caused by hail versus wear and tear. **Exhibit H**, Deposition of Scott Lampman dated July 30, 2024, at 21:22-25.

13.    Mr. Lampman cannot establish how long the tiles were broken. **Exhibit H** at 91:1-4.

14.    The JS Held report found that the clay tile roofing was fractured due to rough handling, foot traffic, temperature and animal activity. The water intrusion found in the garage was a result of an inadequate water shedding condition caused by latent debris and dirt and improper mortar at the roof; and leaks to the interior were not a result of wind or hail damage. *See* **Exhibit E**.

15.    State Farm then issued payment to Plaintiffs in the amount of $11,818.35 for all covered losses, minus the deductible. **Exhibit I**, Communication to Scott Lampman, Donald Grasse and Tamara Grasse Re: Payment, SF-GRASSE0000239, 000256, 000261-000263,

16.    Communication from State Farm that accompanied the payment clearly outlined the parameters of the Policy once again and notified Scott Lampman that wear, tear, deterioration and animal damage were excluded from the Policy. **Exhibit I** at SF-GRASSE0000239, 000261-000263.

17.    Given the difference in appraisal values, a neutral Umpire, Adam Salene, was appointed. Salene agreed that full replacement of the roof was not warranted. **Exhibit J**, Declaration of Appraisers, SF-GRASSE000303-000304.

18.    Salene completed an appraisal award for the amount of $89,186.35 which was signed by Plaintiffs' adjuster. **Exhibit K**, Appraisal Award by Adam Salene, SF-GRASSE000488-000489

19.    State Farm reviewed the appraisal and subtracted only the items excluded from the Policy, as well as the amount already paid to Plaintiffs. State Farm then promptly issued another payment to Plaintiffs in the amount of $19,689.13. **Exhibit L**, Communication to Scott Lampman, Donald Grasse and Tamara Grasse Re: Second Payment, SF-GRASSE000305-000308

20.    The appraisal award ultimately entered by the Umpire allowed for replacement

of 100 clay tiles as well as necessary labor to facilitate cautious removal. **Exhibit M**, Appraisal Valuation Exhibit A by Adam Salene at p. 3, SF-GRASSE000492.

21. The award also noted other miscellaneous damages but no damage to the interior of the home or the garage. *See* **Exhibit M** at SF-GRASSE000490-000531.

22. After this award, State Farm concluded, consistent with its prior investigation and communications with Plaintiffs, that the damage caused by foot traffic, poor maintenance, wear, tear and animal activity were not covered. **Exhibit L; Exhibit N**, Report of ICC Group, LLC dated July 12, 2023, SF-GRASSE000475-000485

23. Plaintiffs' adjuster takes the position that in order to repair the minimal portions of the roof that were damaged by wind or hail, the entire roof must be replaced. **Exhibit H**, Deposition of Scott Lampman dated July 30, 2024, at  14:17-15:9, 48:20-25 and 60:3-11.

24. Despite being presented with estimates by JS Held and the Umpire, Lampman insists that his scope of work and estimates are the only way to repair the property. **Exhibit H** at 48:20-25 and 60:3-11.

25. Lampman admits that the deterioration, brittle condition of the roof and the underlayer are because of its age. **Exhibit H** at 89:20-90:6.

26. Lampman also admits that he does not know if prior wind events over the 20-year life of the roof displaced or loosened the roof tiles. **Exhibit H** at 91:22-92:1.

27. Plaintiffs hired Porter Roofing to examine the roof and provide an estimate. Randy Halfhill from Porter Roofing examined the roof and testified there was no wind or hail damage that caused water intrusion. **Exhibit O**, Deposition of Randy Halfhill dated July 30, 2024, at 17:7-16.

28. Halfhill also agreed that given the age of the roof, wear, tear and deterioration are expected to be observed and that a roof as old as the one at the Property would be expected to leak. **Exhibit O** at 20:8-11.

29. He further agreed that damage to the roof was caused by ordinary wear and tear.

**Exhibit O** at 28:21-25..

30. He also agreed that a roof replacement was not necessary, and the roof was reparable. **Exhibit O** at 28:11-29:2.

31. In fact, he provided an estimate for repairs totaling less than the payment made by State Farm. **Exhibit O** at 20:18-22.

32. Not only did Plaintiffs insist on a full roof replacement, they insisted on a replacement beyond restoring the roof back to its condition prior to damage. They asked for improvements with a custom tile because they liked it. Not because it was necessary. **Exhibit O** at 26:9-21.

33. Plaintiffs provided a report by JR Mendell from All Above Roofing ("Mendell Report"). **Exhibit P**, Expert Report of JR Mendell.

34. The opinion is one page, with attached photographs, and states that there is hail damage to the roof. **Exhibit P**.

35. The report then recommends a replacement of all existing tiles and to repair and recoat the foam on the flat part of the roof. **Exhibit P**.

36. The report does not specify which portions of the roof were damaged by the July 2021 hailstorm, the age of the roof or provide evidence relevant to causation during the relevant time. **Exhibit P**.

37. Plaintiffs also provided a report from construction expert Jim Speros. **Exhibit Q**, Expert Report of Jim Speros.

38. The Speros Report did not state that a full roof replacement was necessary, nor did it disagree with the appraisal estimate. **Exhibit Q**.

39. The Speros report disagreed only with State Farm's application of Policy exemptions. **Exhibit Q**.

40. However, the Speros Report did not provide any opinion that there was not wear, tear, deterioration or animal damage to the roof. Like the Mendell Report, it

acknowledges only that hail damage occurred. **Exhibit Q**.

41.  Defendants Retained Expert Wade Sticht who provided a supplemental report dated November 14, 2024. **Exhibit R**, Expert Report of Wade Sticht.

42.  Wade Sticht is expected to testify consistent with his reports of March 14, 2022, and November 14, 2024. **Exhibits E and R.**

43.  Defendants also retained Steve Klingler, who opined that deferred roof maintenance contributed to breakdown of the roof, and the payments made by State Farm are sufficient to remedy the damage caused by the reported hail storm. **Exhibit S**, Expert Report of Steve Klingler.

44.  Steve Klingler is expected to testify consistent with his report. **Exhibit S**.

45.  Plaintiffs' adjuster, Scott Lampman, insisted on full roof replacement due to hail damage but then admitted he cannot differentiate between hail damage and roof wear and tear. **Exhibit H** at 21:20-25.

RESPECTFULLY SUBMITTED this 10th day of February, 2025.

BROENING OBERG WOODS & WILSON, P.C.

By */s/ Robert T. Sullivan*
Robert T. Sullivan
2800 North Central Avenue, Suite 1600
Phoenix, Arizona  85004
*Attorneys for Defendant State Farm Fire and Casualty Company*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 10th day of February, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Douglas F. Dieker
DIEKER COPPLE, PLLC
14256 North Northsight Blvd., Suite 110
Scottsdale, Arizona 85260
douglas@diekercopplelaw.com
*Attorney for Plaintiffs*

By */s/ Nicole J. Smith*

8